AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

United States of America )
v. )
KYLE COESTER, ) Case No. 11-8340-LRJ
)
)
)

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __September 1, 2005 - present__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to Defraud the United States. |

This criminal complaint is based on these facts:

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Andrea Corbo, Special Agent, S.S.A.O.I.G.
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/31/11

_____
*Judge's signature*

City and state: West Palm Beach, Florida  LINNEA R. JOHNSON, UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

I, Andrea Corbo, upon being duly sworn, depose and state the following:

1. I have been a Special Agent (SA) with the Social Security Administration (SSA), Office of Inspector General since February 2009. Prior to that, I was a Special Agent with the Treasury Inspector General for Tax Administration and the Department of Justice, Office of the Inspector General for 13 years. I have received extensive training in criminal investigation procedures and criminal law at the Federal Law Enforcement training Center in Glynco, Georgia. My responsibilities include the investigation of fraud, waste, and abuse as it relates to the SSA. A number of these investigations focus upon individuals who have applied for SSA benefits while concealing their work activities and earnings. The information in this affidavit is based on my personal knowledge and information obtained from other law enforcement personnel. The information set forth here is provided solely for the purpose of establishing probable cause that KYLE ANNE COESTER conspired to defraud the United States, in violation of Title 18, United States Code Section 371. Because the submission of this affidavit is for the limited purpose of establishing probable cause for this offense, it does not include all of the details of the investigation of which your affiant is aware.

2. The SSA is an agency of the United States. SSA administers two programs that provide benefits based on disability: Social Security Disability Insurance Benefits (DIB) and the Supplemental Security Income (SSI). Pursuant to SSA law, a person must be totally disabled to receive either DIB or SSI disability benefits. SSA defines disability as the inability to engage in any "substantial gainful activity" (SGA) by reason of any medically determinable physical or mental impairment or combination of both that is expected to last for at least twelve (12) continuous months or result in death. A person who is earning more than a certain monthly amount, net of impairment-related work expenses, is ordinarily considered to be engaging in SGA. This monthly amount depends on the person's stated disability, and has increased over the years in accordance with the National Average Wage Index. For instance, in 2011 the monthly SGA amount for a legally blind individual is $1,640 per month; in 2005 it was $1380. There is a provision in Social Security law which allows disabled beneficiaries a nine (9) month (not necessarily consecutive months) trial work period during which time the beneficiary is entitled to receive disability benefits while attempting to become gainfully employed. If this work attempt is successful, and the beneficiary's monthly income net disability-related expenses, exceeds SGA, the disability will be found to cease in the tenth (10th) month and benefits will terminate in

the twelfth (12th) month. If this work attempt is successful, and the beneficiary's monthly income net disability-related expenses, does not exceed SGA, the disability payments will continue. However, if the beneficiary's net income in any subsequent month exceeds SGA, benefit payments will be terminated following a three month grace period. Disability beneficiaries are reviewed periodically by SSA regarding improvement in their medical condition and/or any work attempts to determine whether their entitlement continues. Furthermore, during the application process, SSA beneficiaries acknowledge by their signature an on-going obligation to inform SSA if there are any changes to their medical, employment, or income status.

3. On August 15, 1996, KYLE ANN COESTER, a resident Lauderdale Lakes who is legally blind, applied for and was subsequently approved to receive DIB in November 1996. According to the summary of COESTER's Federal Insurance Contributions Act (FICA) earnings reported to SSA by the IRS (which agency receives wage information from employers) COESTER had no earned income for the years 1996 through 1998. For the years 1999 and 2000, information reported to the SSA by the IRS showed that COESTER worked at Primary Care Practitioners (PCP) in Hallandale, Florida, and earned $3,869 and $6,032 per year, respectively.

4. On October 26, 2001, a wage determination record (Form SSA-L725) was sent to PCP by the SSA to verify COESTER's earnings and work hours because the IRS reported wages earned by COESTER at PCP. The document was signed by PCP vice president Igdalis Christen and was dated January 28, 2002. Igdalis Christen reported that COESTER worked for PCP in 1999 and 2000 and that her monthly wages were $322.42 and $375 per month, respectively.

5. On or about December 6, 2001, COESTER filled out an SSA 821 Work Activity Report. COESTER stated that she began working for PCP in January of 1999, that she worked 25 hours a week, that her starting pay was $6.50 per hour, and that she was currently paid $7.50 per hour. COESTER stated that she conducted light duty office work, such as filing, making appointments, and answering the phones. However, COESTER indicated that she had to stop filing because she found it difficult and she took too long to complete the task. COESTER stated that she has since had to cut back on her hours to 20 hours a week because the work became too strenuous on her eyes. COESTER signed and dated the documentation on December 12, 2001. On or about April 19, 2002, COESTER signed and dated another SSA Work Activity Report

with the same information provided in her previous report. COESTER's FICA earnings reported by PCP to the IRS, and subsequently to the SSA for the years 2001 to 2010 are as follows:

| YEAR | COESTER'S ANNUAL INCOME PER FICA |
|---|---|
| 2001 | $8,318 |
| 2002 | NONE |
| 2003 | $7,788 |
| 2004 | $6,285 |
| 2005 | $6,520 |
| 2006 | $6,240 |
| 2007 | $6,240 |
| 2008 | NONE |
| 2009 | $4,731 |
| 2010 | $17,860 |

Based on the information provided by COESTER and Igdalis Christen on the aforementioned SSA forms and the FICA wages reported to the IRS by the Christens, COESTER has continued to receive DIB benefits, and currently receives DIB benefits in the amount of $952 per month. At no time did COESTER report any changes in her income or employment to the SSA.

6. On March 25, 2011, FBI SA Shaun O'Neill, State of Florida Medicaid Fraud Control Unit (MFCU) Investigator Gary Bergert, and MFCU Lieutenant John Koutsoupis interviewed COESTER as part of an investigation of the Christens and PCP. Subsequently, COESTER provided a sworn statement stating that she had been receiving social security disability for over 5 years. COESTER stated that for at least the last 5 years she has been working full-time as the office manager of PCP from 8am to 4:30 pm, Monday through Friday. COESTER said she was aware of an earned income limitation and has been under-reporting her earnings to maintain her SSA benefit status. COESTER said it was her employer, Joe or Igdalis Christen's idea. COESTER stated that she received a small amount via check for her work, which was equivalent to her wages for approximately 25 hours of work per week. COESTER admitted to receiving

cash from both Joe and Igdalis Christen for the rest of her salary. According to COESTER, the cash payments varied from $100 to $500 per week. COESTER admitted that she also received bonuses. COESTER further admitted that she knew what she was doing was wrong.

7. On August 4, 2011, Health and Human Services, Office of Inspector General SA David DiConza and I interviewed a former employee of PCP, W.P. W.P. worked at PCP from September 2008 to March 2011. W.P. stated she knew fellow employee, Kyle COESTER, and identified COESTER as PCP's office manager. At the time of W.P.'s employment, COESTER was already an employee with PCP. W.P. confirmed that COESTER was also a full time employee with PCP and the terms of employment were Monday through Friday from 8:00 a.m. to 4:30 p.m. W.P. described COESTER's duties as answering all the telephone calls and making all the referrals to facilities and for patients. W.P. said COESTER had her own office and had more responsibilities than W.P.

8. On or about June 7, 2011, I reviewed bank records and itemized deposit items belonging to COESTER and identified through her bank account with BB&T, (checking account number ending in 3371). I found that within the period of April 2004 to December 2010, COESTER received funds identified as checks stating payroll or direct deposits that specified payroll. During the same time period, there are deposits of checks paid to COESTER written against PCP accounts, as well as checks and/or money orders paid to Coester written against personal checking accounts belonging to Joe Christen and Igdalis Christen. There are no payroll deposits from December 2006 to February 2008; only cash deposits and/or deposits of checks from PCP and/or Joe and Igdalis Christen. Several of the checks contain notations that COESTER was earning $13.50 per hour. Since June 2005, COESTER's checking account has periodically shown an amount of income on a monthly basis that exceeds the SGA level set forth by SSA to continue her eligibility for DIB benefits.

9. Based on the information provided in this affidavit, your affiant believes probable cause exists that in the Southern District of Florida, KYLE ANNE COESTER, and others, conspired to defraud the United States Government, through fraudulently concealing income to make it appear as if COESTER was entitled to Social Security Disability payments to which she was not otherwise entitled, in violation of Title 18, United States Code Section 371.

FURTHER YOUR AFFIANT SAYETH NAUGHT

Andrea Corbo, Special Agent
Social Security Administration
Office of the Inspector General

Sworn to and subscribed before me
This 31st day of August, 2011 in
West Palm Beach, Florida.

LINNEA R. JOHNSON
UNITED STATES MIGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** Kyle Coester

**Case No:** _____

**Count #: 1**

Conspiracy to defraud the United States.

18 U.S.C. § 371

* **Max. Penalty:** 5 years' imprisonment; 3 years supervised release; $250,000 fine.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: _____

### BOND RECOMMENDATION

DEFENDANT: Kyle Coester

$50K PERSONAL SURETY BOND
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA: Stephanie D. Evans

Last Known Address: _____

What Facility: _____

Agent(s): Andrea Corbo, S/A
(FBI) (SECRET SERVICE) (DEA) (IRS) (ICE) (**OTHER**)
S.S.A.O.I.G.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 11-8340-CRJ

UNITED STATES OF AMERICA

vs.

KYLE COESTER,

        Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes  __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  _____ Yes  __X__ No

        Respectfully submitted,

        WIFREDO A. FERRER
        UNITED STATES ATTORNEY

BY: /s/ Stephanie Evans
        Stephanie D. Evans
        Assistant United States Attorney
        Florida Bar No. 255180
        500 S. Australian Avenue, Suite 400
        West Palm Beach, FL 33401
        TEL: (561) 820-8711
        FAX: (561) 805-9846